Max H. Galfunt, J.
The defendant herein moves for an
order to vacate the judgment and set aside the sentence imposed on said defendant.
The pertinent facts of the situation are the following.
The defendant was stopped on September 8, 1973, in the County of Kings, and charged with operating an uninsured vehicle in violation of subdivision 1 of section 319 of the Vehicle and Traffic Law, a misdemeanor. The defendant in his motion papers alleges that the car was being brought from Connecticut (where it was registered) to New York in order to be sold. The defendant further alleges that he owned the vehicle but "left it” with his family in March of 1973, when he moved to New York.
The defendant in his affidavit states that, having pleaded "not guilty,” he made repeated appearances in the Summons Part, Kings County. The defendant further states that he felt *859 "worn down” by his many appearances and decided to change his plea "just to get it over with.”
Having pleaded guilty, the defendant, appearing pro se, was sentenced to 30 days or $100 on November 22,1974.
In January of 1975 the defendant received from the New York State Department of Motor Vehicles an order of revocation. Thus the defendant would be without a driver’s license for a period of one year.
Subsequently the defendant engaged the services of an attorney to bring this motion before this court.
The defendant now alleges that he was unaware of the consequences of his plea of guilty, that a meritorious defense exists in that the defendant was the owner and was not operating the vehicle at the time the summons was issued, and that the vehicle was registered in the State of Connecticut (where the defendant resided until March of 1973 — the summons being issued in September of 1973).
The defendant also contends that the only consequence for his plea should be the imposition of a fine.
The defendant further alleges that he was never informed by the court or anyone else that as a result of his plea of guilty there was a possibility that his New York State driver’s license would be revoked, and that he was without aid of counsel on giving his plea of guilty.
The court notes that the defendant put forth nothing in the way of research to support his contentions. The court has taken it upon itself to perform the requisite research.
The defendant’s allegation that his liability is limited due to the fact that he was the owner of a car registered in Connecticut which was driven by another in New York State can be dispatched quickly.
Section 311 (subd 4, par [c]) requires a vehicle lawfully registered in another State to be properly insured if such vehicle makes use of the roads of the State of New York. Such responsibility goes to the owner of the vehicle (as well as the operator). The fact that the defendant claims to have brought the car in from Connecticut to be sold is of little importance.[1] *860 The intent and purpose of the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art 6, incorporating §§ 311, 319) was to implement the policy of protecting the public against the operation of motor vehicles on New York State highways by financially irresponsible persons (Densmore v Hartford Acc. & Ind. Co., 221 F Supp 652; Argenzio v Aetna Cas. & Sur. Co.; 65 Misc 2d 813).
As to the claim by the defendant that the penalties imposed by section 319 were too severe, this court has no control as to the penalties set forth by the Legislature in section 319 of the Vehicle and Traffic Law (it is noted that the defendant received the minimum fine prescribed by law). Also, this court does not have the power or jurisdiction to regulate the actions of the Commissioner of the Department of Motor Vehicles who revoked the defendant’s license.
Nor does this court feel that it has a duty to inform the defendant, beyond the admonition printed on the summons of a possible loss of one’s license, of the consequences that might be invoked by the Commissioner of the Department of Motor Vehicles. Subdivisions 2 and 4 of section 3Í8 of the Vehicle and Traffic Law do state that the commissioner "shall” revoke the driver’s license of the owner of a vehicle that has been operated without the requisite insurance, or "shall” revoke the privileges of an owner of a vehicle not registered in this State which has been allowed to operate while proof of financial security was not in effect. This court does not feel that it must interpret the commissioner’s power of "shall revoke” into a definite "must.” The court might also point out that the defendant did elect to represent himself. Part of his duty was to make himself completely aware of the possible consequences. This should have included a familiarization with the pertinent statutes.
The defendant’s contention that he was unaware of the consequences set forth in section 319 of the Vehicle and Traffic Law could receive the quick retort "Ignorance of the law (or its consequences) is no excuse.”* [2] But the defendant has *861 raised the issue that he was not represented by counsel at the time he entered his plea of guilty. The defendant states that upon proper representation and knowledge of the consequences of a guilty plea, the defendant would have maintained his plea of "not guilty.”
Section 1807 of the Vehicle and Traffic Law (formerly Code Grim. Pro., § 335-a) concerns itself with arraignments for traffic violations and states:
"§ 1807. Provisions applicable to arraignments for traffic violations.
"1. The local criminal court, upon the arraignment in this state of a resident of this state charged with a violation of the vehicle and traffic law, or other law or ordinance relating to the operation of motor vehicles or motor cycles, and before accepting a plea, or in the case of such a defendant who has previously pleaded not guilty, as provided in section eighteen hundred six of this chapter, and who wishes to change or withdraw such plea, must inform the defendant at the time of his arraignment or appearance for trial in substance as follows:
"A plea of guilty to this charge is equivalent to a conviction after trial. If you are convicted, not only will you be liable to a penalty, but in addition your license to drive a motor vehicle or motor cycle, and your certifícate of registration, if any, are subject to suspension and revocation as prescribed by law.
"The giving of the foregoing instructions by means of a statement printed in bold red type in a size equal to at least twelve point type, upon a summons or ticket issued to a person charged with any such offense shall constitute compliance with the requirements of this section. ” (Emphasis added.)
It is noted by this court that the second paragraph of the above section is printed in twelve-point (or larger) type in red ink (see, also, CPL 170.10, subd 4, par [b]; subd 5).
A look at the back of the traffic summons shows that such notice in the summons was given to the defendant as to the consequences of a plea of guilty. Thus this court was in compliance with section 1807 of the Vehicle and Traffic Law (Matter of Scalia v Kelly, 2 Misc 2d 282; Matter of Tepper v Kelly, 5 Misc 2d 1019; Matter of Hickey v Kelly, 9 AD2d 386, aifd 8 NY2d 715; Matter of Weber v Lo Piccolo, 20 Mise 2d 337; Lewitus v Tofany, 28 AD2d 1097; Matter of Lewitus v Hults, 52 Misc 2d 539). The defendant thus had been informed *862 of the consequences through the summons and the warning contained on the back of the summons.
Defendant contends that he would not knowingly plead guilty to a violation if he had been informed that the end result would be the loss of license, and subsequently a loss of his job.
The court has cited cases where the warning on the ticket was sufficient notice of the consequences. This uniform warning as to the possible consequences of a plea of guilty is all that is required. No specific warning is required as to the penalties for a specific charge (Matter of Rogers v Tofany, 35 AD2d 762).
The defendant does not contend that he was not advised of his right to counsel. He elected to waive his right to counsel and proceeded pro se?
The court records indicate that the defendant received his summons on September 8, 1973. The defendant promptly reported to the Adjudication Bureau. The Adjudication Bureau, not being permitted to handle misdemeanors (Vehicle and Traffic Law, §§ 155; 225, subd 2), forwarded the defendant’s case to the Criminal Court, Summons Part (such transfer taking about three months). The court records further indicate that the defendant was not prompt in making his plea of not guilty to the Summons Part. Upon receipt of the defendant’s plea of not guilty, the Summons Part issued the defendant the first available trial date.
A trial date was set for November 22, 1974. The complainant officer was present on that date, and the trial was ready to commence. At that time the defendant decided to plead "guilty” to the charge.
The court finds that the defendant was sufficiently aware of the possible consequences of a plea of guilty. (The defendant should note that his license was revoked by the Commissioner of Motor Vehicles, not by this court. The defendant should direct his attack against the commissioner. This court has no power to restore the defendant’s license removed by the act of the commissioner.)
The Summons Part or traffic court must be viewed realistically. To state that the calendars of these parts are voluminous is to make a vast understatement. It is incumbent upon
3. The traffic summons and the written directions from the Adjudication Bureau as to a plea of guilty inform the defendant of his right to counsel.
*863 each judicial officer to move this calendar. Yet each officer has a much higher duty to insure that each defendant is made aware of his rights and the consequences of his course or courses of action, and he does so.
With millions of cars and trucks on the road and millions of drivers, the chances for violations of the rules of the road are numerous. The defendants charged with violations of the Vehicle and Traffic Law are numerous. Perhaps it would be appropriate to have some form of legal assistance available in the Summons Part to those who cannot afford legal assistance, as well as an Assistant District Attorney, for conviction of some traffic misdemeanors[4] does involve long jail terms (up to one year). Usually, though, the defendant is fairly well safeguarded.
CPL 170.10 (subd 6) provides for appointment of counsel except in the case of traffic infractions as distinguished from misdemeanors. In traffic infraction cases a defendant must be allowed to proceed if he wishes and defend himself if this is what he seeks. In more serious traffic offenses the court may determine that counsel is needed and appoint same if it deems it necessary, and such time may be given to the defendant to obtain counsel.
Yet in traffic court it is basically the defendant’s word and explanation against that of the complainant police officer. While the tactic of a "not guilty” plea often buys time (in hopes of departure of the officer from the force or a failure of the officer to show up), the appearance of the officer often turns a "not guilty” plea into a "guilty” one.
The defendant weighs the seriousness of the offense with the possible fine to be imposed alongside the cost, inconvenience, and time in obtaining an attorney for the defense of a "not guilty” plea or the hazards of a layman proceeding "pro se.”
Here, aware of the possibility of the loss of his license, the defendant proceeded to plead "not guilty,” changed his plea to "guilty,” and suffered the consequences. In this case it was the minimum fine permitted by the statute. Subsequent action by the Commissioner of Motor Vehicles in the form of revocation *864 of the defendant’s license should not change the defendant’s awareness of the consequences at the time he pleaded guilty. Now, the defendant would have this court reverse itself due to the defendant’s tactical blunder. s
It would have been easy to render an oral decision on this motion from the bench and thus preclude a written opinion. However, while it is this court’s primary obligation to deal with the defendant’s motion presently before the court, this court feels an obligation to set forth some concepts which exist as to pleas of guilty to misdemeanor charges.
It is this court’s confirmed opinion that many individuals charged with misdemeanors — including violations under the Vehicle and Traffic Law, the Administrative Code of the City of New York (health, fire, building, etc.), or violation of the Penal Law — do not fully realize the significance of a misdemeanor conviction. Such convictions are serious and have lasting and far-reaching consequences. Such a conviction must ever be borne by an offender to the extent that his future and livelihood might be adversely affected.
Yet when the court advises a defendant of the possible consequences, the invariable reaction is a shrug of the shoulders followed by "I understand, your honor, I plead guilty. How much is the fine?” This court feels that such a reaction is an indication that the possible consequences of a misdemeanor conviction have not been deeply considered.
This court makes no attempt to legislate, for its function is to interpret and apply the law. As it appears from this vantage point, the remedy is educating the public as to the ramifications of a plea of guilty to a misdemeanor charge.
For the above-stated reasons the defendant’s request for an order vacating the judgment and setting aside the sentence is respectfully denied.

. Section 319 prescribes penalties for any owner of a motor vehicle registered in this State, or of an unregistered motor vehicle, who fails to carry proof of insurance on his vehicle. The defendant was a resident of New York State for at least six months (defendant’s statement) and had a valid New York driver’s license when he was stopped initially (section 250 gives new residents 30 days to change their car *860 registration from that of their former State to a New York registration). The defendant’s failure to apply for a New York registration leads to a strong conclusion that the defendant sought to avoid insuring his vehicle. Thus, the defendant’s vehicle is that of an "unregistered” vehicle (nor does the defendant allege that he was charged under the improper section of the Vehicle and Traffic Law).

. In People v McIntyre (36 NY2d 10 17-18), the Court of Appeals stated: "Although the typical defendant pro se may lack certain legal skills, mere ignorance of the law cannot vitiate an effective waiver of counsel as long as the defendant was cognizant of the dangers of waiving counsel at the time it was made.”

. Misdemeanor — offense, other than a "traffic infraction,” for which a sentence to a term of imprisonment in excess of 15 days may be imposed, but for which a sentence to a term of imprisonment in excess of one year cannot be imposed (Penal Law, § 10.00, subd 4). A violation of section 319 — a misdemeanor — may bring a jail term of up to one year.